# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TONY SWIFT, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 07-cv-0748-MJR-PMF |
| KYLE A. RINELLA and JEFF HUTCHINSON, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

Reagan, District Judge:

    A.    <u>Introduction</u>

One year ago, Tony Swift filed suit in this Court against two Williamson County, Illinois Sheriff's Deputies – Kyle Rinella and Jeff Hutchinson ("Defendants"). Swift claimed that while he was being booked at Williamson County Jail in August 2007 on charges of disorderly conduct, Defendants assaulted him, battered him and violated rights secured to him the by the United States Constitution.[1]

More specifically, Swift alleges the following. On August 4, 2007, having been transported to Williamson County Jail and while being fingerprinted as part of the booking process, Swift was shouted at and repeatedly punched in the face. Swift was then placed in a cell. A short while later, a guard or

---

[1] The first four counts of the complaint allege claims under federal law (42 U.S.C. § 1983 and § 1985). The last four counts allege pendent claims for assault and battery.

sheriff's deputy informed Swift he was being "bonded out." After being escorted back to the area where release papers were to be signed, Swift was cursed at, body-slammed, struck, dragged down a hall "out of public sight," and beaten by Defendants. As he lay on the floor, Swift was told to stand up. Then Defendant Rinella shouted at him "don't resist," and tasered him. Swift fell to the ground again. While "prostrate" and "non resisting" on the floor, Swift was tasered twice more by Rinella. Swift was left for 20 minutes until "another guard came along and pulled the taser darts out" of Swift's body. Despite the fact Swift was vomiting, bleeding, and told he needed stitches, Defendants delayed providing medical care (Amended Complaint, Doc. 14, p. 3).[2]

Swift asserts that Rinella and Hutchinson, acting under of color of state law, used excessive force against him and conspired to deny his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution, violating 18 U.S.C. § 1983 and 18 U.S.C. § 1985. Swift also claims that Defendants' conduct constituted assault and battery under state law. Swift prays for damages of $2,000,000 for Counts 1, 2, 3 and 4 (each) plus $200,000 for Counts 5, 6, 7 and 8 (each).

Defendants answered the complaint in January 2008 (Doc. 24). Discovery was undertaken via a schedule entered by United States Magistrate

---

[2] Apparently, after this incident, Swift was charged with aggravated assault and resisting arrest, but the State's Attorney's Office dismissed one or both of those charges (Amended Complaint, Doc. 14, ¶ 18).

Judge Philip M. Frazier (Doc. 27). A settlement conference was set and canceled by Judge Frazier (see Docs. 28, 32). The case is scheduled for trial on December 8, 2008, with a final pretrial conference on November 21, 2008. A single pending motion is before the Court – Defendants' August 22, 2008 motion for summary judgment (Doc. 33). For the reasons stated below, the Court DENIES that motion.

B.   Applicable Legal Standards

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. ***Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008),** *citing* **Fed. R. Civ. P. 56(c),** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322-23 (1986), and** *Krieg v. Seybold*, **481 F.3d 512, 516 (7th Cir. 2007).** *Accord Levy v. Minnesota Life Ins. Co.*, **517 F.3d 519 (7th Cir. 2008).**

In ruling on a summary judgment motion, this Court must view the evidence and all inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. ***TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007);** *Reynolds v. Jamison*, **488 F.3d 756, 764 (7th Cir. 2007).** However, the nonmovant "must present specific facts showing that there is a genuine issue for trial," ***Jordan v. Summers*, 205 F.3d 337, 247 (7th Cir. 2000).** And the Court can find a genuine issue of material fact "only if sufficient evidence favoring the

nonmoving party exists [which would] permit a jury to return a verdict for that party." ***Argyropoulos v. City of Alton*, 594 F.3d 724, 732 (7th Cir. 2008),** *quoting **Sides v. City of Champaign*, 496 F.3d 820, 726 (7th Cir. 2007).** The Court now turns to the standards governing Swift's claims in the case *sub judice.*

Defendants' motion focuses on Swift's § 1983 claims for excessive force. Paragraph one of the combined motion/supporting memorandum *mentions* Swift's § 1985 claims and his assault and battery claims. The rest of the pleading addresses Swift's § 1983 excessive force claims only – Counts 1 and 2 of the amended complaint. Defendants insist they are entitled to summary judgment on those claims, because they "acted reasonably under the circumstances" and "are entitled to qualified immunity" (Doc. 33, p. 1).

Claims of excessive force during arrest are analyzed under Fourth (not Eighth) Amendment jurisprudence. For instance, in ***Lopez v. City of Chicago,* 464 F.3d 711 (7th Cir. 2006)**, an arrestee filed a § 1983 suit against police officers who had shackled him to the wall of a windowless interrogation room for four days after arresting him, leaving him in the nine-by-seven foot room while they investigated the case. The Seventh Circuit instructed: "The district court should have analyzed the detectives' conduct under the Fourth Amendment … [which] protects against unreasonable seizures; [since] an arrest is a seizure…." ***Id.*, 464 F.3d at 718.**

Similarly, the United States Supreme Court has held that the Fourth Amendment protects citizens from the use of excessive force during arrest, and Fourth Amendment claims must be assessed under a reasonableness standard.

> Where, as here, the excessive force claim arises in the context of an arrest…, it is most properly characterized as one invoking the protections of the Fourth Amendment…. This much is clear from our decision in *Tennessee v. Garner*, [471 U.S. 1, 5 (1985)]…. Today we make explicit what was implicit in *Garner*'s analysis, and hold that *all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest … should be analyzed under the Fourth Amendment and its "reasonableness" standard….

**Graham v. Connor, 490 U.S. 386, 394 (1989).**

As the Seventh Circuit explained earlier this year, the issue under the Fourth Amendment is whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them. "The officers' intent in using force is irrelevant in a Fourth Amendment case…. Only its reasonableness matters - which means whether it was excessive in the circumstances, because if it was, it was unreasonable…." **Richman v. Sheahan, 512 F.3d 876, 882 (7th Cir. 2008),** *citing Smith v. Ball State University*, **295 F.3d 763, 770 (7th Cir. 2002), and *Graham*, 490 U.S. at 397.**

The Seventh Circuit has instructed that what counts as excessive force is relative to the circumstances of each particular case – e.g., Was the

detainee/arrestee large? Was he frail? Did he have an obvious vulnerability? Was there a compelling need for haste in handling him or removing him from an area? **Richman, 512 F.3d at 883.** With these standards in mind, the Court examines the record before it.

    C.    <u>Analysis</u>

The essence of Defendants' motion is that they are entitled to summary judgment, because their use of force was reasonable (since Swift was acting "aggressively" toward them), and they enjoy qualified immunity from this suit entirely (see Doc. 33, p. 7).

The doctrine of qualified immunity shields from civil liability public officials, including police officers, performing discretionary duties. **Belcher v. Norton, 497 F.3d 742, 749 (7th Cir. 2007).** Law enforcement officers are called upon to make tough decisions in high-pressure, high-risk situations. "Inevitably, some of those decisions will be mistaken," and subjecting officers to liability for reasonable but ultimately mistaken decisions would deter talented candidates from becoming police officers and result in lawsuits "that distract officers from their duties." **Jewett v. Anders, 521 F.3d 818, 822.** However, courts have a duty to "vindicate constitutional violations by government officials who abuse their offices." **Id.**

Qualified immunity strikes a balance between these conflicting concerns by protecting officers who "act in ways they reasonably believe to be

lawful." *Id.*

Put another way, qualified immunity provides ample room for mistaken judgments and protects all but the "plainly incompetent or those who knowingly violate the law." ***Id., citing Hunter v. Bryant*, 502 U.S. 224, 227-29 (1991).** Thus, qualified immunity shields an officer performing discretionary functions if "a reasonable law enforcement officer would have believed that … his actions were within the bounds of the law." ***Jewett*, 521 F.3d 823, *quoting Belcher*, 497 F.3d at 749, and *citing Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999).**

A two-part test determines whether law enforcement officers enjoy qualified immunity. First, the court must decide whether the facts, ***taken in the light most favorable to the plaintiff***, show that the defendant violated a constitutional right. Second, the court assesses whether that constitutional right was clearly established at the time of the alleged violation. ***Saucier v. Katz*, 533 U.S. 194, 201 (2001)**.

Qualified immunity is an affirmative defense, but once the defendants raise this defense, the plaintiff bears the burden of defeating it. ***Jewett*, 521 F.3d at 823, *citing Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001), *cert. denied*, 536 U.S. 958 (2002), *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007), and *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999).** If the plaintiff cannot establish

that the facts, taken in the light most favorable to him, show the defendant violated a constitutional right, the inquiry ends, and summary judgment should be entered for Defendants. *Id.*

In the case at bar, neither defense counsel nor Swift's counsel has explained *how* the two-part test applies in the case at bar. Defendants correctly quote the test (Doc. 33, p. 7), note that excessive force claims fall under the Fourth Amendment, and then conclusorily posit that the Defendants' use of force was justified, because "the facts clearly indicate" Swift was acting aggressively toward Defendants. Nevertheless, application of the two-pronged test for qualified immunity is fairly straightforward.

Defendants and Swift offer diametrically opposed versions of the key facts needed to determine *whether* the use of force was reasonable. Swift's pleadings and sworn affidavit attest that he was unfamiliar with the booking and fingerprinting procedures, he asked questions of Defendants, those questions were met with punches to the face and the directive to keep his mouth "f—ing shut," and things only deteriorated later during the bonding-out process. According to Swift, after telling Defendant Hutchinson that he (Hutchinson) would be "in trouble" for punching Swift earlier, Swift was body-slammed by Hutchinson several times and then dragged (by both Defendants) down a hall to an area out of public view, where Swift was shouted at and repeatedly tasered, even while prostrate and offering zero resistance.

Deposition excerpts from Defendants Hutchinson and Rinella paint a wholly different picture, with Swift "mouthing off," shouting vulgarities, disobeying orders (e.g., to write his name and address on the bond sheet, to face straight forward as he walked, etc.), making a noise as if he was about to spit on them, and refusing to put his hands behind his back at one point after being "placed on the ground" by Hutchinson near the bonding window.

To corroborate their narrative, Defendants submitted a statement from DeAngelo Patterson (Doc. 33-5). Dated August 20, 2007 (16 days after the incident at issue herein), the statement apparently was written by a William County Detective *for* Patterson and then signed by Patterson (but not by the Detective).

Patterson's statement supports Defendants' contention in certain respects – i.e., Swift "was being a little mouthy with the cops," who "kept pushing him forward and telling him to be quiet," and Swift made "like a snorting noise," as if he was "going to spit" (Doc. 33-5). Patterson also recalls seeing "one cop take him [Swift] to the ground," after which they "went somewhere, I don't know where." *Id.* The latter statement arguably bolsters Swift's account of being slammed to the floor and then dragged to a spot out of public view. In any event, Patterson's statement is unsworn and unwitnessed.

So this Court confronts the sworn and notarized affidavit of Plaintiff countered by the sworn deposition testimony of Defendants. A fairly recent Seventh Circuit case aids resolution of this issue. **Chelios v. Heavener**, **520 F.3d 678 (7th Cir. 2008)**, involved § 1983 excessive force claims (arising out of an arrest) plus a battery claim based on Illinois law, brought against police officers and a municipality. The District Court granted summary judgment for defendants, and the plaintiff appealed.

The Seventh Circuit reversed the grant of summary judgment, emphasizing that the district court erred in failing to take all facts in the light most favorable to the plaintiff and in not resolving "all evidentiary conflicts in his favor," because although a factfinder ultimately could credit the officers' version of events, a reasonable jury *could* side with plaintiff. *Id.* **at 693.**

> Although we might not use the terms "docile and cooperative" to describe Mr. Chelios,... a jury certainly could find that his conduct in no way warranted being tackled by three officers....
> Accordingly, taking the facts in the light most favorable to Mr. Chelios, a jury could find that Officer Heavener used excessive force when he and two other officers tackled Mr. Chelios.

**Chelios, 520 F.3d at 690.**

In the case at bar, taken in the light most favorable to Plaintiff Swift, the facts show that Defendants violated Swift's constitutional right (secured by the Fourth Amendment), and the particular right in question was clearly established at the time of the alleged violation. **See Richman,**

512 F.3d at 883, *citing Sallenger v. Oakes*, 473 F.3d 731, 741-42 (7th Cir.2007)(legal standard governing excessive force claims is well established).

Put another way, construing the facts in Swift's favor, a jury *could* find that the force which Hutchinson and Rinella used against Swift "was so plainly excessive that a reasonable police officer would have been on notice" that it violated the Fourth Amendment. *Chelios*, 520 F.3d at 692.

Also bearing note is **Holmes v. Village of Hoffman Estate***, 511 F.3d 673, 686-87 (7th Cir. 2007)*, a case in which the Court of Appeals reversed the district court's grant of summary judgment on an arrestee's Fourth Amendment excessive force claim after concluding that disputes of material fact existed. The Seventh Circuit pointed to the parties' "significantly divergent accounts of what occurred," adding: "Of course, it is [Plaintiff] Holmes's version that we must credit, given the obligation we have at this stage in the proceedings to construe the facts favorably to him." *Holmes* at 676, *citing Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003).

The Court in *Holmes* reiterated the standard governing excessive force claims under the Fourth Amendment:

> The force employed by a police officer is deemed excessive if, in light of the totality of the circumstances, it was greater than was reasonably necessary to effectuate the seizure…. To assess the degree of force that was justified, a court considers the severity of the crime for which the plaintiff was being

> detained or arrested, whether he posed a threat to the safety of the officers or other persons, and whether the plaintiff was resisting the officers and/or attempting to flee.

***Holmes*, 511 F.3d at 685, *citing Graham*, 490 U.S at 396, and *Lawrence v. Kenosha County*, 391 F.3d 837, 843 (7th Cir. 2004).**

The Seventh Circuit concluded that it could not sustain the entry of summary judgment, because:

> taking into account the chronology that [Plaintiff] Holmes describes, along with his averment that he did not physically strike or resist the officers, we cannot say as a matter of law that the entire range of force … was reasonable.… Accepting Holmes's version of events as true, including Holmes's assertion that he never resisted and was cooperative, it is difficult to conceive of a reasonable explanation for [the officer's] conduct, and a jury could readily concluded that [the officer] used excessive force in knocking Holmes's head against the vehicle.

***Holmes*, 511 F.3d at 686.**

Here, as in ***Chelios*** and ***Holmes***, the facts could support a jury finding that Defendants used unreasonable force. Therefore, summary judgment must be denied.

Additionally, the Seventh Circuit has found the denial of summary judgment warranted in excessive force cases where the "facts draw into question the objective reasonableness of the police action under the alleged

circumstances," since the "missing facts, which will be developed at trial, concern the relationship between the" force used by the officers and the threat or harm presented by the plaintiff. *Chelios* **at 692,** *quoting Clash v. Beatty*, **77 F.3d 1045, 1047 (7th Cir. 1996)(affirming denial of qualified immunity where disputed facts remained bearing on reasonableness of use of force, including degree of plaintiff's agitation, level of threat posed by plaintiff, whether plaintiff made physical contact with officers, and exact sequence of events leading up to interaction).**

Disputes remain here as to critical facts bearing on the reasonableness of Defendants' use of force – *e.g.,* whether Swift was acting aggressively toward or otherwise posed a threat to the officers, whether Swift was resisting the officers, etc.

D. Conclusion

The record before the Court reveals that a reasonable jury could find that the deputies used excessive force against Swift, and genuine issues of material fact preclude the entry of summary judgment. For all the reasons stated above, the Court **DENIES** Defendants' August 22, 2008 motion for summary judgment (Doc. 33).

Trial is scheduled to commence at 9:00 am on December 8, 2008, with a final pretrial conference at 1:30 pm on November 21, 2008 before the undersigned Judge. The December 8th trial setting has been rendered

unworkable.

So counsel should be prepared – at the November 21st final pretrial conference – to discuss consenting to trial before the Magistrate Judge assigned to this case, the Honorable Philip M. Frazier, which would allow the parties to (a) select a new, mutually-agreeable trial date, and (b) conduct trial in Benton rather than traveling to East St. Louis.

IT IS SO ORDERED.

DATED this 31st day of October 2008.

s/Michael J. Reagan<br>
Michael J. Reagan<br>
United States District Judge